A92A1665. HIGGINBOTHAM v. THE STATE.
(428 SE2d 592)

CARLEY, Presiding Judge.

Appellant and a co-indictee were charged with robbery by sudden snatching. The co-indictee pled guilty and appellant was brought to trial before a jury. A guilty verdict was returned and appellant appeals from the judgment of conviction and sentence entered thereon by the trial court.

1. Appellant gave an inculpatory statement. A *Jackson-Denno* hearing was conducted and the trial court found that the statement was admissible. Although appellant enumerates this evidentiary ruling as error, the inculpatory statement was clearly admissible. " ' "(T)he trial court's findings as to factual determinations and credibility relating to the admissibility of statements will be upheld on appeal unless they are clearly erroneous." (Cit.)' [Cit.] The trial court, by its ruling that the statement was voluntarily made, accepted the facts as put forth by the State, and this finding is not clearly erroneous." *Dillman v. State*, 201 Ga. App. 833, 835 (2) (412 SE2d 557)

(1991).

2. Appellant enumerates the general grounds. The record demonstrates that the victim positively identified the co-indictee as one of the two perpetrators. The co-indictee testified for the State and identified appellant as the other perpetrator. In his inculpatory statement, appellant admitted his participation in the robbery. Thus, the evidence was more than sufficient to authorize a rational trior of fact to find proof of appellant's guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

3. Pursuant to appellant's motion under *Batson v. Kentucky*, 476 U. S. 79 (106 SC 1712, 90 LE2d 69) (1986), the trial court held that a prima facie showing of racial discrimination had been made and ordered the State to give reasons for the employment of its peremptory strikes against black prospective jurors. The trial court accepted the State's proffered reasons as neutral and non-racial and denied appellant's *Batson* motion. Appellant enumerates this ruling as error.

The State had employed one of its peremptory strikes against a prospective juror who lived in the same general area as appellant and was of approximately the same age as he. Obviously, possible affinity between a prospective juror and the very defendant on trial can constitute a neutral and non-racial explanation for the employment of a peremptory strike. See *Strozier v. Clark*, 206 Ga. App. 85, 87 (4, 5) (424 SE2d 368) (1992) (civil *Batson*). Compare *Congdon v. State*, 262 Ga. 683 (424 SE2d 630) (1993) (suspected prejudice against State's prosecuting *witness* based entirely upon *extraneous* criminal investigation); *Randolph v. State*, 203 Ga. App. 115 (3) (416 SE2d 117) (1992). It was not required that the State prove that the prospective juror and appellant were personally acquainted. "A reasonable suspicion about a prospective juror's impartiality that falls short of justifying an excusal for cause might well justify the exercise of a peremptory strike. This is such a case. . . . We cannot condemn the prosecutor's reluctance to gamble on the significance of [the proximity of residence and nearness in age]." *Hall v. State*, 261 Ga. 778, 780 (2) (415 SE2d 158) (1991). "[A] prosecutor may strike from mistake, or from ignorance, or from idiosyncracy." *Gamble v. State*, 257 Ga. 325, 326 (2) (357 SE2d 792) (1987). The fact that several black prospective jurors, who apparently neither lived in the same general area as appellant nor were of the same approximate age, *did* serve on the petit jury leads credence to the State's assertion that its employment of a peremptory strike was neutral and non-racial. Compare *Congdon v. State*, supra. "The explanation offered for striking each black juror must be evaluated in light of the explanations offered for the prosecutor's other peremptory strikes, and, as well, in light of the strength of the prima facie case. The persuasiveness of a proffered explanation may be magnified or diminished by the persuasiveness of companion

explanations, and by the strength of the prima facie case." *Gamble v. State*, supra at 327 (5). "The trial court's findings are, of course, entitled to 'great deference,' [cit.], and will be affirmed unless clearly erroneous." *Gamble v. State*, supra at 327 (5). The trial court's finding that the employment of a peremptory strike against a black prospective juror who lived in the same general area as appellant and who was of the same approximate age was racially neutral is not clearly erroneous.

The State also used a peremptory strike against another black prospective juror because he was a pastor. Obviously, employment as a pastor is a racially-neutral factor and the State's desire to secure jurors who are engaged in a less non-judgmental line of work is not illogical. The racial neutrality of this explanation is certainly not diminished by the fact that the State did not employ a peremptory strike against a white prospective juror who had previously served as a *police chaplin*. The law provides that a prosecuting attorney's explanation, even if it is based upon mistake or ignorance or idiosyncracy, "may be sufficient to rebut a prima facie *Batson* showing ([cit.]), so long as it is not ' " 'whimsical or fanciful' " but is "neutral," "related to the case to be tried," and a " 'clear and reasonably specific,' explanation of (the) 'legitimate reasons' for exercising the challenges." (Cit.)' [Cit.] In this case, there is no contention that anything in the record would show that the prospective juror was *not* [currently employed as a pastor]. Accordingly, it cannot be said that the explanation . . ., even if based upon mistake or ignorance [or idiosyncracy], was whimsical or fanciful. [Cit.]" (Emphasis in original.) *Bess v. State*, 187 Ga. App. 185, 187 (1) (369 SE2d 784) (1988). Giving the requisite "great deference" to the trial court's finding, there was no error in denial of appellant's *Batson* motion based upon the State's use of a peremptory strike against a pastor.

4. Over objection, evidence as to appellant's commission of another robbery by snatching was admitted into evidence.

The only connection that was shown to exist between the two crimes is that they both were robberies committed by appellant's sudden snatching of property from a victim. They were not closely related in time, having occurred 18 months apart. They were not related as to locality, having occurred only within the same county. They were not related as to the similarity of property stolen. They were not related as to the modus operandi. In violation of *Williams v. State*, 261 Ga. 640, 641 (2) (409 SE2d 649) (1991), the State specified no purpose for which the "other crimes" evidence would have limited relevancy in the instant case. The trial court did charge the jury that the evidence had been admitted as potentially relevant to the limited issue of appellant's identity as the perpetrator of the instant robbery. "If, [however], the evidence is being presented to prove the *identity*

of the perpetrator of the offense charged, a long list of similarities between or among the crimes might be necessary to show that the crime on trial bears the defendant's 'criminal signature.'" (Emphasis in original.) *Maggard v. State*, 259 Ga. 291, 293 (2) (380 SE2d 259) (1989). Considering the *lack* of any substantial similarities whatsoever between the two robberies, the evidence did not tend to show that the instant robbery was a pattern crime and the handiwork of appellant. Compare *Hayes v. State*, 177 Ga. App. 889, 890 (2) (341 SE2d 709) (1986).

The trial court also charged that the evidence had been admitted as potentially relevant to the issue of appellant's intent. This too was erroneous. "'[W]hile other offenses shown by the evidence objected to were of the same sort as the one for which the defendant was on trial, this did not render the evidence admissible, for they were wholly independent, separate and distinct. (Cit.) There was absolutely no logical connection between them and the case on trial, as required . . . before such evidence would be admissible for the purpose of showing intent. (Cits.) . . . (C)riminal intent is an essential element in every crime where criminal negligence is not involved . . . and to hold . . . that evidence of other offenses is always admissible to show intent, whether or not there be any logical connection between them and the case on trial, would be to abolish the general rule, and to establish the exception as the general rule without any exception thereto.' [Cit.]" *Weems v. State*, 204 Ga. App. 352, 354-355 (419 SE2d 346) (1992).

The evidence of appellant's guilt was not so overwhelming, that we can hold that the error in the admission of the irrelevant "other crimes" evidence was harmless. Appellant had given an inculpatory statement, but he recanted at trial and urged that it was untrue. Although the co-indictee identified appellant as a participant in the robbery, appellant testified at trial that he had not been involved. Thus, the jury was required to decide between the credibility of the State's inculpatory evidence and the credibility of appellant's exculpatory testimony. It cannot be said with any degree of certainty that the erroneous admission of the "other crimes" evidence did not have any prejudicial effect on the jury's determination as to appellant's credibility and, consequently, on the jury's determination as to his guilt. Accordingly, the judgment must be reversed and a new trial held, wherein the irrelevant and prejudicial "other crimes" evidence should not be admitted.

5. The trial court did not err in refusing to allow appellant to cross-examine the victim about his knowledge of another robbery which apparently remained unsolved. *Pealor v. State*, 165 Ga. App. 387, 389 (4) (299 SE2d 904) (1983). The occurrence of this unsolved robbery was no more exculpatory of appellant than the "other crimes" evidence discussed in Division 4 was inculpatory of his partic-

ipation in the instant robbery. It "did not logically tend to prove or disprove either that [someone other than appellant] committed the [instant] crime or that appellant did not commit the [instant] crime." *McNeil v. State*, 202 Ga. App. 900, 901 (415 SE2d 922) (1992).

6. Appellant's remaining enumeration of error relates to circumstances not likely to recur at retrial and will not be addressed.

*Judgment reversed. Pope, C. J., and Johnson, J., concur.*

DECIDED FEBRUARY 22, 1993.

*James A. Yancey, Jr.*, for appellant.

*W. Glenn Thomas, Jr.*, District Attorney, *Stephen D. Kelley, Assistant District Attorney*, for appellee.